Chicago Joe's Tea Room v. Village of Broadview May it please the court, my name is Dean Kalalas. Good morning, your honors. Our submission this morning is based on one undisputed fact. When we sought injunctive relief in the district court, and as we stand here today, adult uses engaged in speech protected by the First Amendment are permitted nowhere in the Village of Broadview. That unquestionable constitutional violation means the judgment of the district court should be reversed. Are you asking us to strike down the Illinois statute? No. What I'm saying is... So what injunction should be issued today? The injunction that should be issued today is that the Village of Broadview should be prohibited from relying on an unconstitutional zoning scheme which incorporates explicitly 5,280 foot setback. Incorporates explicitly. Isn't that the Illinois statute? And by the way, we did challenge the Illinois statute below. Gave notice to the Attorney General. But my argument is the constitutional violation is patent. It cannot be applied to protect the Village of Broadview from the claim that their zoning scheme is unconstitutional. What is currently unconstitutional about it? I'm sorry, Your Honor. I didn't hear you. What is currently unconstitutional about it? Yes. At the time we took the injunction and as I stand here today. Please listen to my question. I tried. Today, what is unconstitutional about the Village laws other than their incorporation of the Illinois statute you are not challenging? We're not asking you to strike down the Illinois statute. You told me that earlier. So please answer the question I just asked you. The 5,280 foot setback. Which is based on the Illinois law, right? It's explicit in the Village of Broadview's 2012 ordinance. It's explicit. So if we issued such an injunction, what good would that do? That would permit us to engage in expressive speech. Please stay close to the microphone. That's how the argument is being recorded, okay? That would permit us to engage and others to engage in expressive speech. It would be in violation of the Illinois law, right? It may be in violation of the Illinois law, but I'm saying that the Village of Broadview cannot rely on that to prohibit the speech. Why not? Because it's unquestionably unconstitutional to rely on that, for the Village to rely on that. I don't get this. You want us to say the Illinois statute is unconstitutional. Nobody can rely on it, but you're not challenging it. Broadview can't rely on it, and I'll tell you why. We're not asking you to strike down the Illinois statute because it's a big state, and there are lots of places where a mild setback may or may not be perfectly permissible. I refer the court to page 8 of the supplemental appendix. There is no such, and that's Judge Lee's opinion, where he recognizes this law effectively bans any new strip club from opening anywhere in Broadview because the entirety of Broadview falls within its scope in one fashion or another. That's not disputed by Broadview. Mr. Polalis, can I ask you a question about appellate jurisdiction here? Yes, Your Honor. What is still pending in the district court? Damages. Against what's the claim? The Village of Broadview. The claim is that they deprived us of our constitutional rights to based on the unconstitutional scheme in effect at the time that we applied. Okay. How much are you asking for? We haven't determined damages. Is there a trial date? There is no trial date. Okay. As near as I can tell, you haven't asked the district court for an injunction lately. We're here. You asked back in 2008 or so? 2008, and then we asked specifically in connection with the briefing that led to Judge Lee's order. So why should 1292A1 be interpreted to apply to this? This seems like an open invitation for piecemeal appeals in a case like this. It's interpreted that way, Judge, because as we state on page two of our brief, it specifically says it. I'm sorry? It specifically says it. When you ask for an injunction and you refuse, you can appeal. When did you ask? You asked for an injunction eight, nine years ago. We didn't appeal at that time. Right. We asked for an injunction in this year, I should say last year, in the cross motion for summary judgment, and in our request explicitly in that cross motion, we asked that an injunction issue. Did you move for a preliminary injunction? No. It was a motion for summary judgment. Look, I know there's some case law from this circuit that's been criticized rather heavily that might allow this, but why should that be allowed if you are not in dire need of an injunction? Well, Your Honor, because that's what the statute says. Well, the statute is not that clear, and we know that the reason for allowing 1292A1 appeals of denials of injunctions is because you might the party who's denied an injunction may be irreparably. And we have been hurt irreparably from the beginning to the end. And when was the last time you asked for an injunction? The last time we asked for an injunction is when we filed the motion for cross motion for summary judgment and asked for injunctive relief. A permanent injunction, right? That's correct. Okay. So why shouldn't we just say why shouldn't we just wait until you all have Your Honor, it's unquestionably a constitutional violation, and it's continuing and it's continued. Then you should have moved for a preliminary injunction. We did. No. Nine years ago, you did. We did. Please stay close to the microphone, sir. I'm sorry. We did. And then we asked for a permanent injunction. And why we did was because we, Judge Gottschall, allowed a motion to reconsider on a prior motion by the village and said, let's look at the evidence on alternative forms. When that discovery was completed, this motion was filed. And that discovery led to the uncontestable fact, which Judge Lee found and which I don't believe Broadview contests, that there is no other form in Broadview. Period. None. Zero. I want to ask a separate question. Who owns this property? Chicago Joe's. The actual title is in the name of the plaintiff, Purvis Conway. Isn't there some trust? Yes. It's a complicated transaction. It is complicated. Is it the same person? Is it the same plaintiff that has standing here? Yes. Yeah, Purvis Conway. I thought he sold it to the trust. He did. Chicago Joe's team room. Oh, you're on it. You're right. Yeah. Look, he's your client. You need to be able to tell us. I'm about to ask you some more questions about this vested rights theory of yours as well. But if you can't sort out the transactions for us, it's going to be very hard to see how there's any vested right here. Who owns the property now? Ma'am. Please. Illinois has a very strange thing for trust in property. The team room owns it in a trust. I'm sorry. The team room owns it in a trust. Why isn't the trust the correct plaintiff? That wasn't brief, Judge. I'd be happy to answer that. I'm asking you. I don't know. Okay. Your vested rights theory. It's never been contested. I'm sorry. If your client does not have standing to assert these rights, then that's something that a failure to brief before or to raise before won't matter. Your Honor, we will provide the court with the answer. With respect to your vested rights theory, what does the record show about money that has actually changed hands? At least $30,000. From whom to whom when? Back in 2006. From Mr. Donohue? Yes. Who's Mr. Donohue? He is the member for the LLC. Okay. Is that in the record? I believe it is. Where do we find it? I will provide the court with that answer. Now, Judge Gottschall was under the impression that $100,000 had changed hands. Is that right? Yes. There was a $100,000 earnest money. Was it $30,000? Was it $100,000? I've also seen $10,000. I know it's in the record, Judge. I know it wasn't raised in this round. The defense is saying this is all smoke and mirrors, and that is in their appellate brief to our court. I was looking for some clear answer in your reply to what money changed hands to support this vested right in a right that apparently would have been illegal under law at the time. Well, the application was May I address the question in a different way? I'll be happy to listen for a few minutes. Okay. But I hope you'll get the answer to the question. Chicago Joe's Tea Room LLC sought the special use permit. That was denied under our own constitutional statutory scheme. We sought the injunction in 2008. We sought the injunction after we answered the question with respect to an alternative form. That tea room seeks a place in Broadview to operate. That is an unconstitutional violation. Is it your contention that every municipality has to have room for strip clubs? It is my contention that Broadview has to have an alternative reasonable form. That wasn't my question. Does every municipality? Every municipality that's like Broadview does. What does that mean? That means this isn't a one square block municipality. There is a case. There are questions raised in the case law that in a very tiny municipality adjoining availability is sufficient. That's not the case here. How big is Broadview? Broadview is on a zoning map. It's about a mile and a half across. It runs from the highway south, and it's on the west side. I've been there, Judge, but it's a relatively large south. Is this in Cook County? It's in suburban Cook County. Is it contiguous with the city limits or something like that? It's close to the city. Okay. You were trying to answer my question about payments for vested rights. I was saying Chicago Joe's Tea Room has standing to raise the question of whether or not we can do business in Broadview. We can't. We can't express speech in Broadview anywhere in Broadview. If you don't own the property. Well, that's not the only thing that would give rise to standing because we've asked to engage in business in Broadview through the use of a property to engage in expressive speech. Let me try this again. I'm looking at page 12 of the defense brief in this court. I'm back. In the middle of the page, Judge Gottschall's vested rights finding in September 11, 2008, was based solely on an inference drawn from a letter reciting that appellant Chicago Joe's had made a nonrefundable deposit of $100,000 to appellant Conway as part of a contract to purchase the property. Evidence obtained in discovery not only refuted this inference, but also demonstrated that the appellants had not actually made any significant expenditure which would grant vested rights under the Illinois vested rights doctrine. Well, that's not true and that's not what the record shows. But you're right, Judge. We didn't respond to that specifically in the reply brief. So what does it show? It does show that... That's rather critical. Chicago Joe's has tremendous debt with respect to the expenditures. Owed to whom? I can tell you that. It's in the discovery and in the record, but I don't know. For improvements? Debt for improvements to the property? Yes. No, not for improvements. For operations and for legal fees. Operations? Maintenance and for legal fees. Who does it owe money to? Mr. Donohue? I don't know the record. I don't mean to be flip about this. I know. Okay. You're asserting serious constitutional claims. But this looks an awful... As this comes to us on the briefs and the appendices, it looks like you all are trying to hide the ball on whether there was a significant expenditure, by whom, for whose benefit, because you're trying to claim a vested right in a use that you never established and that was contrary to several laws at the time you sought it. Let me make it clear, Judge, at this time. I believe and I confess that I became concerned in preparing for this argument that the term vested rights in the briefs creates more confusion than clarity. So let me be clear again today. Our claim is not based on any doctrine of state law. Our claim is under the First Amendment, and that does not permit broad view to bar all adult use speech within its borders. I know the answers in the record, Judge. I do not recall them at this time. And if I may, I see the red light is on. I would say that given the unconstitutional right and our continuing attempt to do business in broad view, it's not dispositive. And the judge did not rule below, and you should not rule below, based on the concept of the confusion created by state law vested rights. So are you giving up a claim based on supposedly vested rights? State law. We're not relying on state law. I think that what happened was vested rights is used as an unfortunate shorthand in connection with the briefing. And that unfortunate shorthand has led to this confusion. We are relying on the undisputed constitutional violation in the scheme that prohibits the exercise of First Amendment rights anywhere in the village of broad view. And that is indisputably unconstitutional. And that is what broad view has relied on to prevent our taking any action in connection with opening a business in broad view. And I'll reserve the rest of my time. Well, you don't have any time left at this point. Was that 15 minutes, John? Your time is up. Thank you, Your Honor. Mr. Scarlato. If it please the court, Mark Antonio Scarlato on behalf of the village of broad view. Your Honors, this case is moot. It's moot for several reasons. First, it's moot, as the court alluded to in some of its questions, because of 65 ILCS 511-5-1.5, what I'll refer to the one mile rule that prevents adult uses from locating within one mile of permitted or protected uses in the state of Illinois. The village of broad view is a non-home rule municipality. Our hands are tied. We have to abide by the law. We can't do anything. If we were to today, for argument's sake, say to Chicago Joes, go ahead, open. We drop all our claims. They still wouldn't be able to open because of the state law. The second reason why it's moot is because the village has cured the infirmities that were pointed out by the district court in September 11, 2008 order. We've amended to remove the 1,000 foot restriction and we've added negative secondary, evidence of negative secondary effects with regard to adult uses in alcohol. To address some of the questions that were asked by the court, and if the court will indulge me, the ownership issue. I have to actually read from my brief because it's so complex. The fact of the matter is neither Chicago Joes nor Pervis Conway have any more ownership interest in the property. The property was sold on August 8, 27 by Articles of Deed to trust number 072982. Trust number 072982 has two beneficiaries. They're two LLCs and neither Chicago Joes nor Pervis Conway nor Donahue have absolutely any interest in either of the beneficiaries or the trust. The fact of the matter is the property was sold. Who are the beneficiaries? The beneficiaries are a corporation. One I believe is called Green Industries and the other one is Fire Protection LLC, I believe. How did you learn who those beneficiaries were? Through discovery, Your Honor. It's not in the title. You could go to the courthouse and couldn't find it. If you go and search title on the property, the Articles of Deed are recorded against the property, and the Articles of Deed have the trust listed naturally but not the beneficiaries. But not the beneficiaries. Exactly. The beneficiaries we learned through. That's under Illinois law is somewhat unusual. Yes. We have them. Which means you could not disclose to the public who owns the property actually unless you do the discovery as you described. Exactly. That's fine. Go ahead. Exactly. The issue of whether or not there was a $30,000 or $100,000 earnest money deposit made is a non-issue. It's a red herring because once the property was sold by Plaintiff Conway to trust number 072982, they had a right to get that back. And the fact of the matter is we don't even know how much earnest money was ever placed. The letter that the district court received said $100,000. The evidence in depositions and discovery said maybe $30,000, and then maybe it was made part of a $10,000 note that was executed later, but it doesn't say $30,000. It doesn't say $100,000. It says $10,000. It's a confusing tangle. And the only reason I can see for such a tangle is to hide who the actual owners of all of this is. But the fact of the matter is that Chicago Joes is not the owner, Purvis Conway is not the owner anymore, and neither of them have any interest at all in the ownership of the property as it is today. With regard to jurisdiction, Your Honor brought up a good question, and it goes to the Seventh Circuit being a bit out of step with the Supreme Court with regard to this issue. The Supreme Court said in Carson that basically when there is a situation where you have an injunction but it's not acted upon for a number of years, like this injunction that hasn't been acted upon for over 10 years, there's this other requirement of irreparable harm to prevent piecemeal litigation and appeals. And I think that that is applicable in this case. The vested rights document that was touched upon a bit by the court is also interesting because it appears that counsel concedes that there is no federal vested rights doctrine. And that's what the district court in its ruling alluded to, was if there are no state claims, there really isn't a federal vested rights doctrine. Well, there sort of is undertakings. We usually use the phrase, I think the Supreme Court uses the phrase, substantial investment-backed expectations. It means basically the same thing, but it sounds like plaintiff is no longer relying on that theory here. Exactly, Your Honor. And if we look at it for argument's sake, under the Illinois vested rights doctrine, they can't satisfy the good faith element of the whole situation. The fact of the matter is they filed an application for special use with the Village of Broadview. The application asked for certain things. The application is like a complaint. The complaint informs the court of what the issues are. The application informs the village of what you're asking for. And they asked for alcohol. Alcohol was prohibited under 10-4-6, and the zoning board of appeals for the village was authorized to look at that requirement, and they looked at that requirement and denied the application. If the court has no further questions. Thank you, counsel. Thanks to both counsel. The case is taken under advisement, and we move to the fourth case this morning, U.S. versus.